Delbert WILKINS, Appellant,

v.

IOWA, STATE OF; Attorney General of State of Iowa, Appellees.

No. 90–3032.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1991.

Decided Feb. 21, 1992.

**538**

Philip B. Mears, Iowa City, Iowa, argued, for appellant.

Thomas D. McGrane, Des Moines, Iowa, argued, for appellees.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge.

WOLLMAN, Circuit Judge.

Delbert Wilkins, serving a life sentence in the Iowa State Penitentiary on a conviction of first degree murder, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. The magistrate judge [1] recommended that it be denied. The district court [2] adopted the magistrate judge's recommendation and denied the petition. Wilkins appeals. We affirm.

### I.

The facts giving rise to Wilkins' conviction are fully set forth in the opinion of the Iowa Supreme Court, which affirmed Wilkins' conviction on direct appeal.[3] We summarize them briefly.

Late in the afternoon of April 13, 1982, Wilkins drove to Rusty's Tap, a bar in Ottumwa, Iowa, with his friend Bernie DeKraai. Upon leaving his car, Wilkins removed the small caliber revolver that was under the center arm rest and stuck it in his waistband under his jacket so that, according to his testimony, it would not be stolen while he was in the bar. Upon entering the bar, Wilkins ordered a beer, but did not drink it because the bartender had served him the wrong brand. Wilkins then struck up a conversation with an ex-girl-friend. Her fiancé, Harry Harville, approached the pair and placed his hand on Wilkins' shoulder. Words were exchanged between the two men, after which Wilkins broke free from Harville's grasp and moved away. He then called out Harville's name, whereupon Harville turned and started moving towards him. Wilkins drew the gun from beneath his jacket and fired twice, the second shot inflicting a fatal wound in Harville's abdomen.

Wilkins had been drinking throughout the day of the shooting. A blood test, taken some two hours after the shooting, revealed that Wilkins had a blood alcohol content (BAC) of .219. Certain witnesses at the scene thought that Wilkins appeared intoxicated, but others did not.

Wilkins had been seeing a psychiatrist, Dr. Lacey, for some time before the shooting to deal with periodic bouts of anxiety. At Dr. Lacey's direction, Wilkins had been taking Ativan, a depressant, although it is not clear whether Wilkins was still using the drug at the time of the shooting. Wilkins had been having difficulties at work. His wife had left him the night before the shooting.

In post-trial proceedings Wilkins' trial counsel, Tom Walter, testified concerning his pre-trial preparation. He stated that he was aware of Wilkins' history of drinking and of the results of the blood alcohol test. He knew that Wilkins had been taking Ativan, but apparently did not know whether Wilkins used it on the day of the shooting. He also knew that Wilkins had been consulting Dr. Lacey. Walter interviewed Dr. Lacey, obtaining from him information

---

**1.** The Honorable Ronald E. Longstaff, United States Magistrate Judge for the Southern District of Iowa.

**2.** The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

**3.** *State v. Wilkens,* 346 N.W.2d 16 (Iowa 1984). (The trial record and the record in these proceedings spell petitioner's name "Wilkins.")

about Wilkins' condition, but did not recall whether he had discussed with Dr. Lacey the effects of Ativan. Walter also interviewed some of the witnesses called at trial. He hired a private investigator to interview witnesses and to investigate other circumstances of the case.

Walter testified that fairly early in the course of his preparation for trial he decided to focus on a defense of justification or self defense and place less emphasis on the defense theories of diminished capacity or intoxication.[4] He chose this course for several reasons. First, there appeared to be evidence supporting the theory of justification. Harville was a large man with some reputation for violence. Second, Walter testified that, in his judgment, juries do not look favorably on a diminished capacity claim, particularly where it is based on voluntarily induced intoxication. Third, the diminished capacity theory could only reduce the degree of the offense, not produce an acquittal, whereas justification would provide a complete defense to all charges. Fourth, he thought that diminished capacity and justification defenses are, practically speaking, inconsistent. If a jury believes that a defendant's judgment was truly impaired, it would not find his justification defense credible. Conversely, if a defendant could think clearly enough to recognize and respond to a threat, his diminished capacity defense would lose credibility. Walter concluded that presenting both theories to a jury with equal force would induce the jury to reject both. Walter believed that the evidence of Wilkins' drunkenness was sufficiently clear that there was little possibility that a jury would return a first degree murder conviction. Finally, Walter stated that Wilkins' and DeKraai's recollections of the incident did not comport with a diminished capacity claim. According to Walter, Wilkins indicated that he knew what he was doing at the time, that he was scared of Harville, and that he thought Harville would hurt him. DeKraai stated that he would not have ridden in Wilkins' vehicle if he thought that Wilkins was intoxicated. On the basis of all these

considerations, Walter concluded that diminished capacity was not a viable defense.

The prosecution offered to let Wilkins plead guilty to second degree murder. Wilkins rejected the offer. Both Wilkins and Walter later testified that Wilkins rejected the offer because a first degree murder conviction did not seem a real possibility, given Wilkins' degree of intoxication. Wilkins thought that they "could do better than that" at trial. Besides, Wilkins was unsure whether he could serve even a ten-year sentence, the estimated time for a voluntary manslaughter conviction.

At trial, Walter focused his efforts on the justification defense. He did not argue diminished capacity during opening or closing arguments, he did not introduce into evidence the results of Wilkins' blood alcohol test, and he did not call Dr. Lacey to testify. Walter did, however, elicit testimony concerning the degree of Wilkins' intoxication. He also included Dr. Lacey on his list of potential witnesses. Walter testified that he wanted to use the diminished capacity theory as a fallback—to "hedge a bet" in case the primary defense was not working well.

The trial court instructed the jury on both defenses. A jury convicted Wilkins of first degree murder. As indicated above, the Iowa Supreme Court affirmed the conviction on direct appeal. The Iowa Court of Appeals denied Wilkins' petition for post-conviction relief. *Wilkins v. State,* 438 N.W.2d 34 (Iowa Ct.App.1988) (Table). Wilkins then brought this habeas action, alleging ineffective assistance of counsel and insufficiency of the evidence.

## II.

Wilkins argues that his trial counsel's performance was so deficient that Wilkins' Sixth Amendment right to counsel was violated. To prevail on a claim of ineffective assistance of counsel, Wilkins must show that his attorney's performance fell below an objective standard of reasonableness and that this deficiency deprived him of a

---

**4.** For the sake of convenience, we will refer to the justification or self-defense theories as "justi-   fication" and the diminished capacity or intoxication theories as "diminished capacity."

fair trial. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

When assessing the adequacy of counsel's performance,

[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted).

■ An ineffective assistance claim presents a mixed question of law and fact; we review the district court's factual findings for clear error and its legal conclusions de novo. *Chandler v. Armontrout,* 940 F.2d 363, 365 (8th Cir.1991).

■ Wilkins first contends that his attorney's performance was deficient because the attorney failed adequately to investigate circumstances that would support Wilkins' diminished capacity argument. A less than exhaustive investigation is adequate for constitutional purposes, however, if reasonable professional judgments justify limiting its scope. As the Supreme Court noted in *Strickland,*

strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to

investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690–91, 104 S.Ct. at 2066.

Wilkins lists a number of courses that his attorney should have pursued during his investigation, including: obtaining Wilkins' medical and prescription records; further questioning Dr. Lacey and Wilkins himself concerning Wilkins' mental state at about the time of the shooting; determining the precise interrelation between the effects of alcohol and Ativan; determining whether Wilkins had in fact previously suffered blackouts; and pursuing the suggestion of the private investigator that Wilkins may have been experiencing problems at home and on the job. This evidence, he maintains, would have further supported his claim of diminished capacity.

The magistrate judge's report and recommendation acknowledged that Walter did not conduct a "complete investigation" of the diminished capacity claim. *Wilkins v. Iowa,* No. 89–520–B, slip op. at 4 (S.D. Iowa July 26, 1990). The magistrate judge concluded nonetheless that Walter's decision to limit the investigation was reasonable because the interviews Walter conducted and Wilkins' own recollection of the event indicated that although Wilkins had been drinking, he was not intoxicated at the time of the shooting. The district court accepted these conclusions. *Wilkins v. Iowa,* No. 89–520–B (S.D. Iowa Oct. 29, 1990).

Wilkins argues that the record does not support the district court's conclusions. He contends that diminished capacity must have been a viable defense because, among other things, Wilkins' BAC shortly after the incident exceeded .2. Since Walter could not reasonably conclude that diminished capacity was not a viable defense, he argues, Walter could not competently have relied on this ground as a reason for limiting the investigation. Wilkins also argues that Walter's decision to limit the investigation could not have been based upon his perception that Wilkins had a clear recollection of the events surrounding the shooting incident because Wilkins' recollection did

not clear until sometime shortly before trial.

After reviewing the record, we are convinced that it amply supports the district court's findings concerning why Walter limited his investigation. We also note that these were not the only reasons upon which Walter relied to justify limiting the scope of the investigation. Walter testified that he also considered, among other things, that justification constitutes a complete defense whereas diminished capacity is only a mitigating factor, that juries may not be sympathetic to a claim based on self-induced intoxication, and that justification and diminished capacity may be practically inconsistent. These reasons for limiting the scope of the investigation constitute reasonable professional judgments.

This is not a case where the attorney conducted no investigation. *Compare, e.g., Thomas v. Lockhart,* 738 F.2d 304 (8th Cir.1984) (counsel's investigation deficient where he did nothing beyond reading police file). Walter interviewed Dr. Lacey concerning Wilkins' condition. He was aware of Wilkins' history of alcohol abuse, his use of Ativan, and the results of Wilkins' blood alcohol test. He interviewed witnesses and hired a private investigator. Thus, in our view, Walter's investigation provided a sufficient basis for him reasonably to conclude that diminished capacity did not warrant further investigation.

Wilkins next argues that the district court erred in finding that Walter adequately presented the diminished capacity claim. It is true that Walter did not present all the available evidence supporting diminished capacity. We conclude, however, that this decision was a valid exercise of professional judgment in formulating trial strategy, which we will not second-guess on appeal.

Walter was aware of facts supporting the diminished capacity claim, and at trial he elicited evidence concerning Wilkins' intoxication. He testified that, in his opinion, the better course was not to focus on diminished capacity. Wilkins had already refused to plead guilty to second degree murder, at least in part because he did not know whether he could serve even ten years. Wilkins' recollection of the incident contradicted the claim that his judgment was impaired at the time of the shooting. The justification defense offered the potential for complete exoneration, while diminished capacity could only mitigate the severity of the offense. Walter testified that, in his judgment, diminished capacity and justification are as a practical matter inconsistent defenses. By focusing on justification, Walter could hope to utilize both defenses. This was a strategic decision that should not be second guessed. *See Johnson v. Lockhart,* 921 F.2d 796 (8th Cir.1990) (decision to attack prosecution's case, rather than presenting affirmative evidence, was strategic and did not constitute ineffective assistance).

Wilkins next argues that Walter failed to advise him effectively during the plea negotiations. The district court found that Wilkins had failed to raise this claim on direct appeal, as required by state law and that he had not made any showing before the magistrate judge to satisfy the requirements of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Going further, the district court stated that it would rule against Wilkins on the merits of this claim.

We find no error in the district court's ruling on this issue. The record is clear that Wilkins violated Iowa procedure by not raising at the first opportunity his claim that Walter's plea advice constituted ineffective assistance of counsel. In the petition for habeas relief filed with the magistrate judge, Wilkins offered no explanation for his default. Therefore Wilkins may not rely upon this claim. Moreover, we agree with the district court that on the merits this claim of ineffective assistance must fail.

### III.

■ Wilkins' final argument is that the evidence was insufficient to support a verdict of first degree murder. Accordingly, we must determine whether any rational trier of fact could have found Wilkins guilty beyond a reasonable doubt under the

relevant state law, viewing the evidence in the light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Redding v. Minn.,* 881 F.2d 575, 578 (8th Cir.1989), *cert. denied,* 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990).

Under Iowa law, Wilkins could be convicted of first degree murder if he killed willfully, deliberately and with premeditation. Iowa Code § 707.2 (1983). Premeditation and deliberation need not exist for any specific period of time. *State v. Jespersen,* 360 N.W.2d 804, 807 (Iowa 1985); *State v. Poyner,* 306 N.W.2d 716, 718 (Iowa 1981).

Wilkins argues that the circumstantial evidence does not support the conclusion that he acted with malice aforethought. Wilkins argues that he carried the weapon into the bar for safekeeping, not with the intention of finding and killing Harville; that Harville first approached Wilkins, not vice versa; that the incident occurred spontaneously, in a public place, and in front of a number of people; and that after the shooting, he gave up the gun and remained in the bar. All these facts, he maintains, negate a finding of malice aforethought.

Whether Wilkins specifically intended to kill Harville when he first arrived at the bar is not dispositive. The jury had before it evidence that Harville and Wilkins had separated by several feet when Wilkins drew his gun, called out Harville's name, and shot him twice. A rational jury could have found beyond a reasonable doubt that Wilkins formed the specific intent to kill Harville during the time he spun free from Harville's grasp, moved away, and then drew his weapon from under his jacket.

Wilkins also argues that his BAC of .219 some time after the incident precludes a finding that he had the capacity to form specific intent. In Iowa, however, "diminished capacity due to voluntary intoxication does not always vitiate specific criminal intent. Intoxication does not absolve one of responsibility if sufficient capacity is maintained to form the requisite intent...." *Victor v. State,* 339 N.W.2d 617, 620 (Iowa Ct.App.1983); *see also State v. Collins,* 305 N.W.2d 434, 437 (Iowa 1981).

Wilkins drove to the bar. He was able to understand that his pistol might be stolen, and decided he ought to remove it from his vehicle. He recognized that the bartender had served him the wrong type of beer. There was evidence that he did not appear intoxicated and that he was able to carry on a conversation. We agree with the Iowa Supreme Court and the district court that the evidence was sufficient to permit a rational jury to find that Wilkins' intoxication was not so severe that it deprived him of the capacity to form specific intent.

The judgment of the district court is affirmed.