———————

No. 95-2634

———————

Freddie Mack,                     \*

                                    \*

         Appellant,         \*

                                      \*   Appeal from the United States

    v.                           \*   District Court for the Eastern

                                      \*   District of Missouri.

Paul D. Caspari,             \*

                                      \*

         Appellee.          \*

———————

Submitted:  February 12, 1996

Filed:  August 8, 1996

———————

Before MAGILL, HEANEY, and MURPHY, Circuit Judges.

———————

MAGILL, Circuit Judge.

Appellant Freddie Mack appeals the district court's[1] denial of a writ of habeas corpus under 28 U.S.C. § 2254. Mack argues that the district court erred in (1) failing to provide habeas relief on the ground that Mack had been abandoned by state postconviction counsel, (2) denying habeas relief on the merits of three alleged trial errors, and (3) failing to hold an evidentiary hearing. We affirm.

———————

[1]The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri.

**I.**

In the early morning of July 9, 1985, Michael Tracy and Robert Schaffner, both of whom had been drinking beer and taking amphetamines, were in a car parked in the "Stroll" area of St. Louis, Missouri, which is known for prostitution. While speaking with several prostitutes, Tracy and Schaffner were attacked and robbed by three men. One of the robbers, identified at trial as petitioner Mack, shot both Tracy and Schaffner in the stomach. On July 30, 1985, Mack was indicted in Missouri state court on two counts of first degree assault, two counts of first degree robbery, and one count of armed criminal action.

Mack entered a plea of not guilty, and the case proceeded to trial before a jury in January 1986. Mack was subsequently convicted on all counts. He was sentenced to two consecutive terms of thirty years imprisonment for assault, two concurrent terms of twenty years imprisonment for robbery, and a consecutive term of life imprisonment for armed criminal action. Mack's convictions were affirmed on direct appeal. See State v. Mack, 725 S.W.2d 78 (Mo. App. 1987) (per curiam).

On February 4, 1988, Mack filed a pro se motion for postconviction relief pursuant to Missouri Rule 29.15, arguing that he had received ineffective assistance of counsel for a variety of reasons. On March 17, 1988, the state public defender's office was appointed to represent Mack in his Rule 29.15 motion. Mack retained private counsel to pursue the motion, and the appointed counsel withdrew. Because Rule 29.15(f) required Mack's retained counsel to file an amended motion within thirty days of his March 25, 1988, appearance, the Rule 29.15 court notified Mack on May 26, 1988, that no amended motion would be accepted. On June 3, 1988, Mack moved to dismiss his pro se motion without prejudice, but the Rule 29.15 court denied the motion. On June 10, 1988, the Rule 29.15 court held a hearing on the merits of Mack's pro se

-2-

motion, and denied postconviction relief. Mack's attorney filed a second motion on June 29, 1988,[2] and the Rule 29.15 court refused to consider the untimely second motion. The Missouri Court of Appeals affirmed both the refusal to consider the second motion and the denial of postconviction relief. See Mack v. State, 775 S.W.2d 288, 290-92 (Mo. App. 1989).

On January 31, 1994, Mack petitioned the Missouri Supreme Court for a writ of habeas corpus, which was denied on February 22, 1994. Mack brought the instant habeas petition before the district court on April 20, 1994, and the case was referred to a magistrate judge for a report and recommendation. Without specifically addressing Mack's claim that his postconviction counsel had abandoned him, the magistrate judge recommended that the habeas petition be denied. Following consideration of objections, the district court declined to hold an evidentiary hearing and adopted the report and recommendation of the magistrate judge.[3] Mack now appeals the denial of his petition for habeas relief.[4]

## II.

Mack contends on appeal that he was abandoned by his state postconviction counsel, and that the district court erred in not

---

[2]The June 29 motion included additional allegations of Mack's trial counsel's ineffectiveness. The most significant of these new allegations was that Mack's trial attorney presented an alibi defense using the wrong date.

[3]The only change made by the district court to the report and recommendation was to strike a reference to Abdullah v. Groose, 44 F.3d 692 (8th Cir. 1995), which had been vacated, pending rehearing en banc by this Court in Abdullah v. Groose, 75 F.3d 408 (8th Cir.) (en banc), cert. denied, 64 U.S.L.W. 3779 (May 20, 1996).

[4]Mack also moves this Court to modify the record on appeal pursuant to Federal Rule of Appellate Procedure 10(e) to include a transcript of his June 10, 1988 Rule 29.15 hearing, his habeas petition to the Missouri Supreme Court, and the Missouri Supreme Court's order denying relief. This motion is granted.

granting habeas relief so that Mack could secure a second Rule 29.15 hearing in a Missouri state court. In Luleff v. State, 807 S.W.2d 495 (Mo. banc. 1991), the Missouri Supreme Court recognized a limited right to effective assistance of counsel in postconviction hearings. Where the record of a postconviction proceeding "shows not mere ineffectiveness but such a total default in carrying out the obligations imposed upon appointed counsel by Rule 29.15(e) as to constitute abandonment," State v. Bradley, 811 S.W.2d 379, 384 (Mo. banc. 1991) (per curiam), new counsel should be appointed and the petitioner allowed a new hearing. Because the filing of an amended petition out of time can constitute abandonment, see Sanders v. State, 807 S.W.2d 493, 494-95 (Mo. banc. 1991), Mack argues that he was denied due process of law and equal protection because he was not granted a second hearing.

Although Mack referred to abandonment by postconviction counsel in both his petition for habeas relief, see Pet. at 5p, and in a memorandum of law supporting the petition, see Mem. at 9 (April 20, 1994), the district court did not construe Mack's petition as a claim of abandonment by postconviction counsel. Rather, the district court considered this as a complaint that the state court erred in "summarily enter[ing] an order denying petitioner the chance to amend his pro se Rule 29.15 motion or to grant him a hearing without first notifying petitioner of its intent to do so." Report & Recommendation at 9. The appellee argues that we are precluded from considering this argument. See, e.g., Mellott v. Purkett, 63 F.3d 781, 784 (8th Cir. 1995) (this Court may not "consider legal arguments raised for the first time on appeal, except for plain error"). We disagree. While we do not require a district court to read a "pro se motion so clairvoyantly so as to recognize [an] unarticulated argument," id., neither is this rule "meant to trap a petitioner who has poor drafting skills. The stakes in habeas cases are too high for a game of legal 'gotcha.'" Schneider v. Delo, 85 F.3d 335, 339 (8th Cir. 1996) (discussing state exhaustion requirement). While Mack could have,

-4-

and in fairness to both the district court and the opposing party should have, been clearer in his presentation of this issue in the district court, we conclude that this issue was adequately raised in the district court to allow review by this Court. See Turner v. Armontrout, 922 F.2d 492, 493 n.1 (8th Cir. 1991) (pro se habeas petitions are construed liberally).

Mack has failed to state a cognizable claim for habeas relief. It is well settled that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," Coleman v. Thompson, 501 U.S. 722, 752 (1991), and that "[c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Id. Mack is therefore left only with a claim that the state court erred by incorrectly applying its own procedural rule in a postconviction hearing--a consideration beyond this Court's review. See Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994) ("A federal court may not re-examine a state court's interpretation and application of state law."); Smith v. Lockhart, 882 F.2d 331, 334 (8th Cir. 1989) (finding no due process violation where there was only an "alleged violation of a state rule concerning post-conviction proceedings, an area in which a defendant is not necessarily afforded constitutional protections"), cert. denied, 493 U.S. 1028 (1990).

While a contention that a state court has applied a procedural rule arbitrarily to a defendant's prejudice may state a federal constitutional due process violation, see, e.g., Evitts v. Lucey, 469 U.S. 387, 401 (1985) ("when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution--and, in particular, in accord with the Due Process Clause"), such a contention could not be made under the facts of this case. The rule allegedly violated by Mack's Rule 29.15 court did not even exist until long after the decision had become final. The Luleff opinion, creating the abandonment rule, was filed on April 9, 1991,

while Mack's unsuccessful appeal of the denial of his Rule 29.15 petition was decided on June 27, 1989, almost two years earlier. Mack's precise argument, therefore, is not even that the state courts violated an existent state procedural rule, but that in adhering to settled state law, the courts deprived him of due process and equal protection by failing to anticipate future state law developments. We find this argument unsound.

The dissent asserts that Missouri courts consistently applied the abandonment rule prior to its creation in Luleff. See Dissenting Op. at 14-19. We disagree. In Sanders, 807 S.W.2d at 494, filed the same day as Luleff, the court stated:

> Until today this Court has not deviated from its firm position that failure to timely file a motion constitutes a complete bar to consideration of a movant's claims, even when the claims are attributable entirely to inaction of counsel. Our courts have traditionally held that postconviction proceedings may not under any circumstances be used to challenge the effectiveness of postconviction counsel.

The dissent would have us ignore this clear statement of Missouri state law by the highest Missouri state court. See Dissenting Op. at 17-18. This we simply cannot do. See Wainwright v. Goode, 464 U.S. 78, 84 (1983) (per curiam) ("the views of the State's highest court with respect to state law are binding on the federal courts").[5]

---

[5]We note that the dissent relies on Easter v. Endell, 37 F.3d 1343 (8th Cir. 1994), for the proposition that "only a firmly established and regularly followed state practice may be interposed by a State to prevent subsequent review of a federal constitutional claim." Dissenting Op. at 18 (quotations and ellipsis omitted). While this is undoubtedly correct, it is also irrelevant under the facts of this case. Unlike the defendant in Easter, Mack has not sought to litigate the issue of whether his trial counsel was ineffective, and therefore he has not had to show that an intervening state procedural rule was inadequate to bar federal consideration of the underlying claim. See Easter, 37 F.3d at 1345 (discussing bar of federal consideration of claim by independent and adequate state grounds). Rather, Mack has argued that his Rule 29.15 hearing constitutes a violation of his federal constitutional right to due process. See Appellant's Br. at 6 ("Mr. Mack was deprived of his Fifth, Sixth, and Fourteenth Amendment rights when

-6-

he was not granted a full and fair opportunity to pursue his state collateral proceeding"). These are distinct claims, see, e.g., Easter, 37 F.3d at 1346 ("While Arkansas' post-conviction procedures . . . are not in themselves constitutionally infirm, the question is whether they are adequate to foreclose Easter's federal habeas corpus petition."), and should be distinguished.

Mack next challenges the district court's denial of habeas relief on the basis of several trial errors. Mack alleges that he received an unfair trial because two members of the jury were biased, because a witness identification of him as the gunman was improperly admitted, and because the prosecutor improperly called him a killer during closing arguments. We review the district court's conclusions of law de novo, see Dodd v. Nix, 48 F.3d 1071, 1073 (8th Cir. 1995), and its factual findings for clear error. See Fed. R. Civ. P. 52(a). On collateral review of a state court conviction, the findings of fact by the state court are generally presumed correct, see 28 U.S.C. § 2254(d), unless not fairly supported by the record as a whole. Mack failed to object to the alleged juror bias or prosecutorial misconduct at trial, see Mack, 725 S.W.2d at 78, and our review of these issues would usually be precluded due to procedural default. See, e.g., Jones v. Jerrison, 20 F.3d 849, 854 (8th Cir. 1994). Because the Missouri Court of Appeals considered Mack's allegations for plain error, however, see Mack, 725 S.W.2d at 78, this Court may also review for plain error. See Jones, 20 F.3d at 854.[6] Under this standard, we will grant

---

[6]There appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this Court. Compare Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir.) (applying plain error review), cert denied, 116 S. Ct. 144 (1995); Jones, 20 F.3d at 854 ("Because the state courts reviewed [petitioner's] claim under a plain-error standard, we also apply a plain-error standard on habeas review.") with Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996) ("a properly limited plain error review by a state court does not cure procedural default"). We are "powerless to resolve this conflict in our decisions, as one panel of this Court is not at liberty to overrule an opinion filed by another panel. Only the Court en banc may take such a step." Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1228 n.8 (8th Cir. 1995) (quotations omitted). "We are, however, free to cho[o]se which line of cases to follow," id., and we choose to review Mack's claims for plain error.

habeas relief only if "manifest injustice resulted" from the alleged errors. <u>Blackmon v. White</u>, 825 F.2d 1263, 1266 (8th Cir. 1987).

A. Juror Bias

During voir dire, venireperson Salsman stated that her sister-in-law's mother had been shot and raped. When asked whether this had any effect on the venireperson's feelings about people who have been charged with a crime, venireperson Salsman replied, "No, I think I could sit in judgment." Report & Recommendation at 3. Venireperson Salsman also stated that her cousin was a former police officer who had been shot in the line of duty. Venireperson Royer indicated that a friend's daughter had been beaten to death five years before, and that the killer was on death row. When asked whether this had "any effect on you now in how you see people who are just even charged with crimes?", venireperson Royer responded, "I don't know. I couldn't really say for sure." Report & Recommendation at 4. The trial court did not <u>sua sponte</u> conduct any further investigation, and Mack's attorney made no challenges against these venirepersons. Both Salsman and Royer served as jury members. Mack contends that these jurors harbored actual bias against him, depriving him of a fair trial.

Mack had a constitutional right to an impartial jury. <u>See</u> <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961). For Mack to "maintain a claim that a biased juror prejudiced him, however, [he] must show

that the juror was actually biased against him." Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir. 1995). Whether a juror is biased "is a question of fact, and we defer to a state court finding of juror bias if it is fairly supported by the record." Antwine v. Delo, 54 F.3d 1357, 1369 (8th Cir. 1995), cert. denied, 116 S. Ct. 753 (1996).

In considering Mack's allegation of juror bias under review for plain error, the Missouri Court of Appeals concluded that Mack suffered "no manifest injustice nor miscarriage of justice." Mack, 725 S.W.2d at 78. We agree with the district court that this finding is fairly supported by the record. Venireperson Salsman indicated during voir dire that her attitude towards those accused of crimes had not been affected by knowing the victim of a crime, and venireperson Royer's response, while equivocal, did not affirmatively state bias. Because Mack has demonstrated no actual juror bias, the district court properly denied habeas relief for this claim.

B. Witness Identification

While recovering in the hospital immediately after the assault, Tracy and Schaffner were shown mug shot books containing pictures of persons who frequented the Stroll area. Schaffner positively identified Mack's photograph as his assailant, while Tracy was more tentative, stating that he was "not a hundred percent sure" that it was his attacker. Report & Recommendation at 7. Mack objected to the admission of Tracy's identification of Mack, which was overruled. Both Tracy and Schaffner identified Mack as the gunman at trial. Mack contends that the trial court erred in allowing Tracy's identification of Mack to be used as evidence, depriving him of a fair trial.

In Trevino v. Dahm, 2 F.3d 829, 833 (8th Cir. 1993), this Court stated that

[a] conviction based on eyewitness identification at trial will be set aside only when pre-trial identification procedures were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm. The central question is whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pre-trial identification techniques. Neil v. Biggers, 409 U.S. 188 (1972). The factors to consider in evaluating the likelihood of misidentification include: the opportunity a witness has to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation. Id. at 199-200.

(note omitted; citations omitted). Whether an identification was reliable is a question of fact, id., and "federal courts must accord the state court findings of fact a high measure of deference." Id.

It is true that the circumstances surrounding Tracy's identification of Mack were not optimal: the assault occurred outside in the predawn hours, Tracy had been drinking and using amphetamines, and he was not absolutely certain that Mack's photograph was that of the gunman. The state trial court, however, concluded that the use at trial of Tracy's identification of Mack was not improper, see Trial Tr. at 41, 80 (overruling Mack's motion in limine to out-of-court identification and objection to in-court identification), and the trial court was affirmed on appeal. See Mack, 725 S.W.2d at 78 (holding that "no manifest injustice nor miscarriage of justice" occurred during trial). Under the totality of circumstances, we conclude that the record supports these findings. Tracy had an opportunity to observe the gunman, who was only two feet away from Tracy at one point. There was nothing suggestive in the photo line-up presented to Tracy a day after the shooting, and he confronted Mack at trial only six months after the shooting. While not absolutely certain, Tracy was "almost sure"

-11-

that Mack was the gunman.  Report & Recommendation at 7.  Under these circumstances, "[a]ny remaining concerns about the suggestiveness of the identification procedure or the reliability of the out-of-court identification were for the jury to resolve."  Dodd v. Nix, 48 F.3d 1071, 1075 (8th Cir. 1995).

C. Prosecutorial Misconduct

During closing arguments, the prosecutor, referring to Mack, stated that "that man is a killer.  He tried to kill and I'm sure he would do it again given the opportunity."  Trial Tr. at 257.  The prosecutor later argued that

> [e]veryone who swore and who testified said he's the killer,
> he's the man who shot, he's the man who tried to kill. . . . We
> are fortunate that we have an opportunity to remove from the
> community a killer, a killer who is just as frightening to the
> people who live in and about the Stroll as he should be to
> people who come down there who have no business there.

Trial Tr. at 270.  Mack did not object to the statements at trial, and now contends that the statements "inflamed the jury with passion and prejudice against Mr. Mack," Appellant's Br. at 13-14, thereby depriving him of a fair trial.

We agree with Mack that the prosecutor's comments were improper.  The prosecutor should not have referred to Mack, on trial for assault, robbery, and armed criminal action, as a "killer"; nor should the prosecutor have referred to his own certainty of Mack's potential dangerousness.  In our review, however, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned."  Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quotations omitted).  Rather, the "relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Id. (quotations omitted).  Mack bears the

heavy burden of showing

> that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.  Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety, the verdict probably would have been different.

Jones v. Jones, 938 F.2d 838, 844-45 (1991) (quoting Blair v. Armontrout, 916 F.2d 1310, 1324 (8th Cir. 1990), cert. denied, 502 U.S. 825 (1991)) (internal quotations omitted).

Mack has not met this burden.  The prosecutor's statements "did not manipulate or misstate the evidence or implicate other specific constitutional rights of the accused such as the right to counsel or the right to remain silent," Pickens v. Lockhart, 4 F.3d 1446, 1453 (8th Cir. 1993), cert. denied, 114 S. Ct. 1206 (1994), and Mack "has made no showing that absent the alleged impropriety, the verdict probably would have been different."  Jones, 938 F.2d at 845.  Mack made no objection to these statements at trial, placing the trial court in the difficult position of either sua sponte reprimanding the prosecutor and giving a corrective instruction to the jury, thereby possibly interfering with Mack's own trial strategy, cf. Darden, 477 U.S. at 183 n.14 (noting that counsel "made the tactical decision not to object to the improper comments"), and perhaps reinforcing the prosecutor's improper statements, or allowing these few comments to go without remark.  The trial court chose the latter path, and we perceive no manifest injustice arising from the trial court's decision. The district court did not err in denying Mack habeas relief on this claim.

**IV.**

Finally, Mack contends that the district court erred in

denying his petition without first granting him an evidentiary hearing. While "[g]enerally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing," Toney v. Gammon, 79 F.3d 693, 697 (8th Cir. 1996) (quotations omitted), Mack's "petition may be summarily dismissed if the record clearly indicates that [his] claims are either barred from review or without merit." Id.

Summary dismissal of Mack's petition for habeas relief was proper, and Mack was therefore not entitled to an evidentiary hearing in this case.[7] Under the clear record developed in the state trial court, none of the alleged errors by Mack deprived him of a fundamentally fair trial, or otherwise rendered his continued incarceration in a Missouri prison violative "of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The district court did not err in denying him an evidentiary hearing.

---

[7]Mack is correct that "the state courts did not hold a full and fair evidentiary hearing" on several of his claims. Appellant's Br. at 23. This, however, was not due to an error by the state courts, but rather due to actions, or inactions, by Mack himself. As noted above, Mack failed to object to the alleged juror bias or prosecutorial misconduct at trial, depriving the state court of any opportunity to address those issues contemporaneously with additional evidentiary proceedings. Mack was denied an evidentiary hearing during his Rule 29.15 proceedings because he failed to make a timely request for one, as required by the state rule. See Mack, 775 S.W.2d at 291 ("Movant [Mack] failed to request an evidentiary hearing within the time constraints of Rule 29.15 (g), therefore the trial court correctly refused to hold a hearing."). We do not require "a federal evidentiary hearing solely on the basis of a habeas petitioner's negligent failure to develop facts in state-court proceedings," Keeney v. Tamayo-Reyes, 504 U.S. 1, 8-9 (1992), unless the petitioner "can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure." Id. at 11. We note that Mack has shown neither cause nor prejudice.

-14-

Accordingly, we affirm the judgment of the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. After Mack filed his pro se motion in the Missouri circuit court, he was appointed post-conviction counsel. Mack's counsel, however, promptly abandoned him by failing to file a timely amended motion as required under Rule 29.15.[1] The state court's failure to appoint new post-conviction counsel for Mack violated his constitutional right to due process under the established state law. Accordingly, I would remand this case to the Missouri state courts so that newly-appointed counsel can raise all of Mack's claims for full consideration by the circuit court. Alternatively, in reaching the merits of Mack's pro se 29.15 motion on this appeal, I believe Mack was denied a fair trial because of juror bias and prosecutorial misconduct.[2] Based on these grave trial errors, Mack's convictions cannot stand. The state should either release Mack within a reasonable period of time or grant him a new trial.

I. ABANDONMENT

Beginning with Fields v. State, 572 S.W.2d 477 (Mo. 1978) (en banc), the Missouri Supreme Court has recognized that a pro se movant for habeas corpus relief is entitled to appointed counsel and that counsel is obligated to file a timely amended motion

---

[1]In the untimely, amended motion, the movant claimed, generally, that his trial counsel was ineffective for failing to interview the movant; assigning an inexperienced assistant to represent movant at the hearing; and failing to interview witnesses, at least one of whom would have testified that the movant could not possibly have committed the crime charged. (Legal File at 13-20.)

[2]I agree with the majority opinion insofar as it holds that Mack's convictions were not the result of unreliable identification by witnesses.

-15-

incorporating all of the movant's claims.  Id. at 482.  In Fields, the Missouri Supreme Court, considering the predecessor to Rule 29.15, stated that it was

> designed to discover and adjudicate all claims for relief in one application and avoid successive motions by requiring motions to be in questionnaire form and by providing for the appointment of counsel if the motion presents questions of law or issues of fact and the movant is shown to be indigent.

Id. at 480 (emphasis added).  By adopting this rule, the state "'assumed complete responsibility for protecting constitutional rights in accordance with federal principles.'"  Id. at 481 (quoting Anderson, Post-Conviction Relief in Missouri--Five Years Under Amended Rule 27.26, 38 Mo. L. Rev. 21, 43 (1973)).  While praising the new rule, the court observed that

> delay and confusion rather than speed and finality had been occasioned . . . and an excessive number of appeals have resulted from summary denials of pro se motions to vacate sentence or judgment without the appointment of counsel, evidentiary hearings or specific findings of fact or conclusions of law.

Id. at 482.

The court then adopted a three-step process to be followed for all motions under 27.26: (1) the court must appoint counsel for all indigent movants; (2) appointed counsel will have the opportunity and the obligation to amend the motion and to state factually, "in a lawyerlike fashion," all of the movant's claims for relief under Rule 27.26; and (3) based on the amended motion, the trial court shall make findings of fact and conclusions of law on all issues presented.  Id. at 483.  Thus, the Missouri Supreme Court determined that to ensure protection of an indigent movant's constitutional rights, counsel must be appointed and must submit an amended motion incorporating all of the movant's claims.  The

burden was no longer to be solely on the movant, but on appointed counsel. The failure of appointed counsel to file an amended motion would no longer prejudice the movant. In the words of Judge Satz of the Missouri Court of Appeals:

> It [would be] incongruous, to say the least, to choose counsel for movant and then penalize the movant because counsel did not fulfill the duty she was chosen for. In effect, movant's rights [would be] extinguished without meaningful consideration because of the court's choice and not due to any apparent fault of movant.

Young v. State, 724 S.W.2d 326, 328 (Mo. Ct. App. 1987).

The successor to Rule 27.26, Rule 29.15, was adopted January 1, 1988. Mack filed a pro se, post-conviction motion on February 4, 1988. A public defender was appointed to represent him on March 17, 1988. Had Mack's motion been filed thirty-four days earlier, his case would have been decided under Rule 27.26 and Fields, and he no doubt would have been entitled to have newly-appointed counsel file an amended motion detailing all of his claims. As it was, the Missouri courts determined that Mack's motion would be decided under the new rule. Although one might question this decision because Mack had been convicted while Rule 27.26 was in effect, I accept the state court's decision for purposes of this appeal.

Nevertheless, Mack is entitled to the same relief under Rule 29.15 as he would have been under the former rule. Rule 29.15 continues to require appointed counsel to interview the movant and to file a timely amended motion. The rule provides:

> Counsel shall ascertain whether sufficient facts support the grounds asserted in the motion and whether the movant has included all grounds known to him. . . . If the motion does not assert sufficient facts, or include all grounds known to movant, counsel shall file an amended motion that sufficiently alleges the additional facts and grounds.

-17-

Rule 29.15(e) (emphasis added). The only change in the rule, significant to this case, is the length of time during which counsel must take action. Nothing in Rule 29.15 changes counsel's obligations. As the Missouri Supreme Court, sitting en banc, confirmed in Luleff v. State, 807 S.W.2d 495 (Mo. 1991) (en banc), an indigent movant is entitled to appointment of new counsel to file an amended 29.15 motion if originally appointed counsel abandons his or her duty. Id. at 498.

In Luleff, after the movant filed a pro se motion for post-conviction relief, the circuit court appointed counsel to represent Luleff. Counsel failed to file an amended motion under Rule 29.15(e) within the appropriate time frame. Reviewing the conduct of appointed counsel, the court remanded the case to the motion court for:

> determination of whether appointed counsel acted to ascertain whether sufficient facts are asserted in the pro se motion and whether the movant included all grounds known to him. The motion court shall make findings on this point. If the court finds that appointed counsel has not performed as required by Rule 29.15(e), and the lack of performance is not the result of movant's action or inaction, the court shall appoint new counsel allowing time, if necessary, to amend the pro se motion as permitted under Rule 29.15(f), and the cause shall proceed anew according to the provisions of the rule.

Id. at 497-98.

In a companion opinion issued the same day as Luleff, the Missouri Supreme court reached the same result and prescribed the same remedy. See Sanders v. State, 807 S.W.2d 493, 495 (Mo. 1991) (en banc). The Sanders court unfortunately confused matters, however, by stating that Luleff marked a change in course for the Missouri courts, id. at 494, and the majority cites Sanders as support for that proposition. See Maj. Op., supra at 6. With all due respect to the Missouri Supreme Court, which certainly reached a correct result in Fields, Luleff, and Sanders, three of the four

-18-

cases cited in Sanders do not even involve abandonment. See Young v. State, 770 S.W.2d 243, 244-5 (Mo. 1989) (en banc) (relief denied because post-conviction counsel filed timely amended post-conviction motion as minimally required under 29.15); Lingar v. State, 766 S.W.2d 640, 641 (Mo. 1989) (en banc) (same); Sloan v. State, 779 S.W.2d 580, 583 (Mo.) (en banc) (same), cert. denied, 489 U.S. 1040 (1980). Those cases merely state the general rule that a post-conviction proceeding cannot be used to challenge the effectiveness of counsel in the post-conviction proceeding. They do not address the situation in which appointed post-conviction counsel entirely abandons his or her duty to timely file an amended motion. In the only relevant cited case, State v. Sweet, 796 S.W.2d 607 (Mo. 1990) (en banc), the court considered the issues raised in a late amended motion "ex gratia," obviating any need for a remand. Id. at 615. Thus, Luleff does not mark a change in Missouri's recognition and redress of abandonment by post-conviction counsel. Mack is entitled to nothing more and nothing less than Luleff. He is entitled, according to the Missouri Supreme Court, to have this matter remanded to the circuit court to make the required findings.

The majority states that a convicted indigent has no constitutional right to an attorney in a post-conviction proceeding. I do not dispute that as a general statement of the law. As Judge Wollman pointed out in Easter v. Endell, 37 F.3d 1343 (8th Cir. 1994), however, "once such a remedy is granted by the state, its operation must conform to the due process requirements of the 14th Amendment." Id. at 1345 (citing Evitts v. Lucey, 469 U.S. 387, 400-01 (1985)). Thus, "'only a firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." Id. (quoting James v. Kentucky, 466 U.S. 341, 348-51 (1984)). As discussed above, the Missouri Supreme Court en banc has consistently applied rules 27.26 and 29.15 to require that appointed, post-conviction counsel file a timely

amended motion, and if post-conviction counsel fails to do so, a movant is entitled to have new counsel appointed.

The majority contends that if a state incorrectly applies its own procedural rules, as it has clearly done in this case, a movant is not entitled to relief. In other words, if a particular movant is unfortunate enough to have his case presented to a court that disregards established law, he is not entitled to relief. But our court, as indicated by Easter, holds to the contrary. This case presents even a stronger case than Easter because here, the Missouri Supreme Court has not inconsistently applied Rule 29.15; rather when a post-conviction counsel has abandoned his client, the court has consistently appointed new post-conviction counsel.

I do not believe that we have any alternative but to remand to the district court with directions to remand to the state court to permit newly-appointed counsel to file an amended 29.15 motion within thirty days of the appointment.

## II. TRIAL ERRORS

The state courts and the federal district court did not address Mack's abandonment argument. Rather, they considered--and rejected--Mack's claims as raised in his original, pro se motion, including that (1) two biased persons were permitted to sit on the jury, and (2) the prosecuting attorney improperly commented that Mack was a "killer" who needed to be convicted in order to prevent him from killing again. The majority agreed with the state and federal courts and determined that these claims lack merit. I disagree.

### A. Juror Bias

The majority recognizes that Mack has a constitutional right to an impartial jury. They also accurately characterize the record

-20-

with respect to the two jurors whom Mack's trial counsel failed to strike for bias. Conceding that whether the two jurors were biased against Mack is a question of fact, I am unable to agree with the majority that the state court's finding of no bias was fairly supported by the record.

When venireperson Royer stated that a friend's daughter had been beaten to death five years earlier, she was asked whether this event would have any effect on her view of people who are charged with crimes. She answered, "I don't know. I really couldn't say for sure." (Trial Tr. at 33.) At this point, neither Mack's counsel nor the court made further inquiry. Forgetting for a moment that further inquiry should have been made, the venireperson's answer alone indicated that she was not sure in her own mind whether she could be fair. Her expressed uncertainty as to her impartiality, without additional comment, constituted a sufficient basis for her disqualification from the jury. Similarly, venireperson Salsman informed counsel that her sister-in-law's mother had been shot and raped and that her cousin, a former police officer, had been shot in the line of duty. (Id. at 31, 35.) Salsman expressed doubt that these experiences would affect her ability to serve on the jury, stating, "I think I could sit in judgment." (Id. at 31.) Yet her bias, based on the experiences alone, was evident from the record.

The majority concludes that Mack has not demonstrated actual bias. Not only do I disagree with their conclusion, but I question how or when Mack could have attempted to further demonstrate the jurors' bias. The remedy for allegations of juror partiality is an evidentiary hearing at which a defendant has an opportunity to show actual bias. Smith v. Phillips, 455 U.S. 209, 215 (1981). The majority concedes that Mack was never given such a hearing. See Maj. Op., supra at 13 n.7. They argue, however, that it was Mack's failure to make a timely request that prevented him from a hearing in the state court. Id. As discussed above, Mack was abandoned by

-21-

his post-conviction counsel. At a minimum, we should remand this matter to the state courts for an appropriate evidentiary hearing on juror bias.

    B.  <u>Prosecutorial Misconduct</u>

I agree with the majority that the comments made by the prosecutor during closing arguments were clearly improper. Referring to Mack, the prosecutor stated:

> [T]hat man is a killer. He tried to kill and I'm sure he would do it again given the opportunity. . . . Everyone who swore and who testified said he's the killer, he's the man who shot, he's the man who tried to kill. . . . We are fortunate that we have an opportunity to remove from the community a killer, a killer who is just as frightening to the people who live in and about the Stroll as he should be to people who come down there who have no business there.

(Trial Tr. at 257, 270.) In my view, however, these comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

The prosecutor made repeated references to Mack as a "killer," despite the fact that Mack was not on trial for murder or attempted murder. In addition to the inappropriate characterizations of Mack as a "killer," the prosecutor improperly injected fear into the jurors' minds, urging them that if they did not take advantage of the opportunity to lock up the "frightening" Mack, there is no telling who may be his next victim. The prosecutor even buttressed this general fear of Mack with the explicit statement, "I'm sure [Mack would kill] again given the opportunity." Such personal opinions by a prosecutor about a defendant's future criminal proclivity cannot be tolerated. <u>See</u> <u>United States v. Young</u>, 470 U.S. 1, 8 (1985) (prosecutor must refrain from interjecting personal beliefs into the presentation).

Not only were these comments improper and prejudicial to Mack's case, but nothing was done by either counsel or the court to minimize their prejudicial effect.[3]  See Miller v. Lockhart, 65 F.3d 676, 683-684 (8th Cir. 1995) (in determining whether a prosecutor's improper closing argument rises to the level of a due-process violation, we must consider whether counsel or the court cured the erroneous arguments).  Without any curative measures taken by the court or counsel, I cannot believe that the egregious statements made by the prosecutor did not affect the outcome of the trial.

## CONCLUSION

For the above-stated reasons, I dissent from the majority opinion. Mack clearly was abandoned by his post-conviction counsel and, at minimum, I would remand this case to the state courts for appointment of new counsel.  Alternatively, I would vacate Mack's convictions because the biased jury and the prosecutor's improper statements violated Mack's constitutional right to a fair trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]The majority suggests that Mack's trial counsel's failure to object to the prosecutor's comments may have been a trial strategy with which the court may not have wanted to interfere.  See infra at 12.  I cannot accept the majority's suggestion.  In any event, these arguments, again, could have been explored in the context of an evidentiary hearing--a hearing Mack was never given.