UNITED STATES of America, Appellee,

v.

Gilbert Wallace JOHNSON, Appellant.

No. 80–1946.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1981.

Decided April 30, 1981.

Delaney & Thompson, Ltd. by Peter J. Thompson, Minneapolis, Minn., for appellant.

Thomas K. Berg, U. S. Atty., D. Minn., Minneapolis, Minn., Betsy De La Vega, Legal Intern, for appellee.

Before HEANEY, Circuit Judge, PECK, Senior Circuit Judge,* and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

A grand jury charged Johnson in a one-count indictment of bribery of an I.R.S. official, in violation of 18 U.S.C. § 201(b)(1). A jury acquitted Johnson of this offense, but convicted him of the lesser included offense of payment of a gratuity to a public official, 18 U.S.C. § 201(f). The district court[1] imposed a one-year sentence but partially suspended execution of the sentence on condition that two months be served in a jail-type institution, to be followed by two years probation. Johnson appeals, contending (1) the district judge erred in not granting a mistrial when it was discovered that the jury had listened to extraneous, unadmitted portions of a tape recording, and (2) the district judge erred in failing to give his requested instructions.

Appellant had various financial difficulties and owed taxes totalling approximately $16,400.00 for the years 1974, 1977 and 1978. An I.R.S. agent, one Wilson, was assigned to the case, and tax liens were filed. In 1978 or 1979, due to Johnson's inability to pay, Wilson filed documents to suspend collection on the 1974 and 1977 accounts and told appellant that these accounts had been suspended or shelved. In the early part of 1980 Wilson contacted Johnson again and requested payment for all three years. Johnson responded that he could not pay the 1974 and 1977 accounts, but would pay for 1978. He paid part of the 1978 account in January, and the remainder of that account by personal check on April 15, 1980. Wilson then began to process the necessary papers for removal of the 1978 lien.

In April, 1980 Johnson attempted to obtain financing for a house. The lender did a credit check on Johnson and discovered the tax liens. Johnson was informed that the loan would not be approved unless the liens were removed.

Appellant testified that it was his understanding that the tax liens should have been removed because the 1974 account had been settled in bankruptcy proceedings, the 1977 account had been "shelved," and the 1978 account had been paid. Accordingly, he called Wilson on April 21, 1980 and stated that the liens were still in effect and that he wanted them released.

Wilson referred Johnson to the I.R.S. special procedures office in St. Paul. A lien clerk, one Dorothy Fletcher, informed Johnson that the 1978 lien release was delayed because his payment had been by personal check, and the 1974 and 1977 liens were still in effect. Neither Fletcher nor Wilson told Johnson the amount of the liens.

Johnson called Wilson on April 23 and April 24, and both times requested that the liens be removed. Johnson also called on April 29 and arranged to meet with Wilson for lunch. At this meeting Johnson offered Wilson one thousand dollars to release all tax liens. Wilson testified that he responded that the money should be applied to pay off the taxes. Wilson also testified that he asked, "You mean to tell me you are going

---

* The Honorable John W. Peck, United States Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

to give me a thousand bucks for nothing?", and "What do you want done?" Appellant responded that he wanted the tax liens released.

Wilson reported Johnson's offer to his superiors. Pursuant to their instructions, Wilson arranged to meet Johnson in a parking lot on May 1. At the meeting Wilson was wired and his conversation with Johnson was tape recorded. Johnson gave Wilson an envelope containing one thousand dollars in cash. Wilson asked, "You want me to take care of those liens, right?" Johnson responded in the affirmative.

At trial the taped conversation was admitted into evidence and played to the jury. During jury deliberations it came to the attention of the district judge that there was being played in the jury room a portion of the tape which contained conversations between I.R.S. agents Sherry and Wilson just before Wilson and Johnson met in the parking lot. This portion of the tape containing these conversations had not been admitted into evidence. The district judge then sent the jury out for refreshments and she and the attorneys then listened to the tape. Appellant's attorney urged that the jury should be discharged, but, instead, the court sent the jury home for the evening. The next day the trial court ruled that the material was not prejudicial, and refused to discharge the jury. Johnson then moved for a mistrial, and this motion was denied. Thereafter, the judge instructed the jury to disregard the extraneous matter on the tape.

■ Johnson vigorously contends that when extraneous matter reaches the jury, the burden is on the government to show lack of prejudice, and cites *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), in support of his position. He further contends that in any case, the extraneous matter was favorable to the government, and the weakness of the government's case against him mandates reversal.

The unadmitted portion of the tape begins with Sherry's instructions on how to get to the parking lot. Wilson and Sherry then discuss the economy, and its effects on the immediate area. This reminds Sherry of how "broke" he is. Wilson then explains how one can buy a house economically through a probate court. Sherry observes Johnson parked in a pickup between a "Fotomat" and a sign, and instructs Wilson to go over there. Wilson says Okay. Then there are some cryptic comments:

SHERRY: Anything?

WILSON: Nothing.

SHERRY: I'm glad he's there.

WILSON: I am, too.

SHERRY: (inaudible) weekend. No problem at all.

WILSON: Okay.

At the end of the admitted portion of the tape, there is also the following:

UNIDENTIFIABLE: (inaudible) the hell is he going.

Assuming that the government carries the burden of showing lack of prejudice, we nevertheless find that the extraneous matter in no way prejudiced the defendant. This is not a case in which the extraneous matter summarized evidence against the defendant, *compare United States v. Adams*, 385 F.2d 548 (2d Cir. 1967), or in which the extraneous matter included evidence of past wrongdoing, *compare Osborne v. United States*, 351 F.2d 111, 117 (8th Cir. 1965), or any other prejudicial material. Rather, the extraneous matter was simply irrelevant to any issue in the case.

The jury already knew that Wilson was acting under the instructions of Sherry. The conversation between Sherry and Wilson does not show that they were handling the case with any special expertise. The discussion of house purchases through the probate court does not refer to the house that Johnson wanted to buy. The comments that the agents were glad appellant came were not prejudicial, because there was never any dispute over whether appellant actually met with Wilson and paid the money. The "no problem at all" at worst meant there was no problem arranging the meeting, not that it would be easy to obtain a conviction.

**818**

We next consider appellant's contention that the district court erred in refusing to give all of his requested instruction on intent. The court gave the following instruction on the intent required for violation of 18 U.S.C. § 201(f):

> To prove the criminal intent as required by Section 201(f) of Title 18, the government must prove beyond a reasonable doubt that the defendant, with criminal intent, that is knowingly and intentionally, as distinguished from inadvertently or negligently, gave $1,000 to Revenue Officer Wilson for and because of official acts performed or to be performed by Wilson. This crime does not require the bad purpose or the corrupt intent that the charge in the Indictment charges nor does it have as a purpose the intent to influence the public official, but rather to have a reason for the giving of the money the performance by the recipient of some official act.

This instruction used virtually the same language as the instruction requested by appellant, but left out the following two sentences: "Thus you are called upon to determine what was in the defendant's mind and the purpose which motivated him in his course of conduct. If he acted knowingly and purposefully and not through accident, misunderstanding, inadvertence or other innocent reasons, then he acted with the requisite criminal intent."

The defense theory was that Johnson regarded the payment as an innocent attempt to legitimately settle outstanding tax debts. Johnson claims that the instructions the court gave failed to incorporate this theory. We note that counsel for appellant did in fact argue his intent defense to the jury and that the trial court observed: "But really, you can argue pretty much the same under these various versions [of proposed instructions]."

"A defendant is entitled to an instruction on his theory of the case if there is evidence in the record to support it and a proper request is entered." *United . States v. Brown*, 540 F.2d 364, 380 (8th Cir. 1976). We have examined the instructions as a whole and we are satisfied that the instructions given though perhaps not ideal were sufficient to incorporate Johnson's theory of the case and to fairly advise the jury of its duty under the law of the case. *United States v. Brown, supra.* Had the jury believed that the payment was for a settlement, rather than "for and because of official acts performed or to be performed by Wilson," then doubtless the jury would have acquitted Johnson on the lesser included offense.

Accordingly, the judgment of the district court is affirmed.