_____

No. 96-2087
_____

Sylvester Hornbuckle,           *
                             *
        Appellant,     *    Appeal from the United States
                             *    District Court for the
    v.                 *    Eastern District of Missouri.
                             *
Michael Groose,            *
                             *
        Appellee,      *

_____

Submitted:  December 13, 1996

Filed:  February 5, 1997
_____

Before WOLLMAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District
    Judge.
_____

WOLLMAN, Circuit Judge.

Sylvester Hornbuckle appeals from the district court's[2] denial of his
28 U.S.C. § 2254 petition.  We affirm.

**I.**

On February 1, 1986, Hornbuckle attacked and robbed Robert and Emily
Sudhoff in a parking lot in a St. Louis suburb.  On May 14, 1987,
Hornbuckle was convicted of two counts of first-degree robbery, four counts
of armed criminal action, and two counts of

_____

[1]The HONORABLE JOHN R. TUNHEIM, United States District Judge
for the District of Minnesota, sitting by designation.

[2]The Honorable Jean C. Hamilton, Chief Judge, United States
District Court for the Eastern District of Missouri, adopting the
report and recommendation of the Honorable Thomas C. Mummert,
United States Magistrate Judge for the Eastern District of
Missouri.

kidnapping.  The Missouri Court of Appeals reversed his convictions on April 26, 1988.  The Missouri Supreme Court granted transfer and affirmed Hornbuckle's convictions on April 18, 1989.  See State v. Hornbuckle, 769 S.W.2d 89 (Mo. 1989) (en banc).

Hornbuckle filed a section 2254 petition in the district court, raising two issues:  whether the trial court should have inquired into the prejudicial effect of an exhibit that, although properly admitted into evidence, mistakenly went to the jury; and whether Hornbuckle's due process and equal protection rights were violated when his conviction was based upon the visual identification testimony of Robert Sudhoff, who never saw his attacker.  The district court rejected both of Hornbuckle's claims and his request for an evidentiary hearing.

On appeal, Hornbuckle argues four claims:  that the district court erred in not holding an evidentiary hearing on the possible prejudicial effect of the exhibit mistakenly sent to the jury; that Hornbuckle was denied due process by Robert Sudhoff's identification testimony; and two ineffective assistance of trial counsel claims.

## II.

Hornbuckle concedes that the two ineffective assistance claims he raises on appeal were not raised in state court and have been procedurally defaulted, because under Missouri law he should have raised these claims in a motion for post-conviction relief.  Hornbuckle did not file a motion for post-conviction relief under Missouri Supreme Court Rule 27.26 (1987), which was in effect when he was convicted, or under Missouri Supreme Court Rule 29.15, which became effective on January 1, 1988.  See Mo. Sup. Ct. R. 29.15

(1995).[3]  Because Hornbuckle did not file a Rule 27.26 motion prior to January 1, 1988, he was subject to the provisions of Rule 29.15(m), which required persons convicted before January 1, 1988, to file a Rule 29.15 motion on or before June 30, 1988.  The failure of such persons to timely file such a motion would be held to "constitute a complete waiver of the right to proceed under this Rule 29.15."  Mo. Sup. Ct. R. 29.15(m) (1995).

Hornbuckle argues that Missouri's adoption of Rule 29.15 serves as cause excusing his procedural default.  Hornbuckle points out that after the Missouri Court of Appeals reversed his conviction on April 26, 1988, he was no longer under a judgment of conviction and had no reason to file a Rule 29.15 motion prior to June 30, 1988.  He claims that under the provisions of Rule 29.15(m), he would not have been allowed to file a Rule 29.15 motion after the Missouri Supreme Court reinstated his conviction in 1989, although he made no attempt to file such a motion.[4]  Hornbuckle argues that because he had no opportunity to file a Rule 29.15 motion, the State's actions prevented him from raising his ineffective assistance claims in state court.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

We do not agree that Missouri's adoption of Rule 29.15 serves as cause.  Hornbuckle has not explained why he could not have filed a Rule 29.15 motion between January 1, 1988, and April 26, 1988.  Hornbuckle assumes that he should not have been expected to file

---

[3]Rule 29.15 was amended effective January 1, 1996, but those amendments are not relevant to this case.  See Mo. Sup. Ct. R. 29.15 (1996).

[4]While the State did not concede at oral argument that Hornbuckle could not have filed a Rule 29.15 motion after his conviction was reinstated in 1989, we have previously recognized that by the terms of Rule 29.15(m), a defendant's failure to file a motion by June 30, 1988, constituted a complete waiver of the right to do so.  See Abdullah v. Groose, 75 F.3d 408, 413 (8th Cir.) (en banc), cert. denied, 116 S. Ct. 1838 (1996).

such a motion while his direct appeal was pending, but this is contrary to what Rule 29.15 required him to do. Rule 29.15 was designed as a unitary review process, in which motions for post-conviction relief were to be filed while the direct appeal was pending, with the appellate court subsequently reviewing both the direct appeal and the appeal from the ruling on the post-conviction motion. See Mo. Sup. Ct. R. 29.15(b), (*l*) (1995); see also Lowe-Bey v. Groose, 28 F.3d 816, 818-19 (8th Cir. 1994) (explaining Rule 29.15 process). As a person convicted prior to January 1, 1988, Hornbuckle could have filed his motion anytime between January 1 and June 30, 1988, as provided for by Rule 29.15(m). Hornbuckle had at least four months while under a judgment of conviction in which he should have filed a Rule 29.15 motion raising his ineffective assistance claims, but he failed to do so.

Hornbuckle argues that because the strict mandatory time limits of Rule 29.15 were designed to thwart the assertion of federal rights, Rule 29.15 is an inadequate ground to bar federal review. We have previously rejected this argument. See Sloan v. Delo, 54 F.3d 1371, 1378-81 (8th Cir. 1995), cert. denied, 116 S. Ct. 728 (1996); see also Reese v. Delo, 94 F.3d 1177, 1181-82 (8th Cir. 1996). Hornbuckle had almost a year from the date of his conviction--May 14, 1987--until his conviction was reversed on April 26, 1988, in which to prepare his post-conviction relief motion. Cf. Sloan, 54 F.3d at 1379-80 (petitioner had more than a year between sentencing and June 30, 1988, deadline to prepare motion).

The adoption of Rule 29.15 cannot serve as cause for Hornbuckle's failure to properly raise his ineffective assistance claims in state court, and Hornbuckle has not argued that a fundamental miscarriage of justice has occurred. Thus, our review

of these claims is procedurally barred.[5]

### III.

Hornbuckle argues that the district court erred in not holding an evidentiary hearing on his claim regarding the possible prejudicial effect of an exhibit--Mrs. Sudhoff's diary--that went to the jury during its deliberations.  The district court rejected this claim, noting that Hornbuckle had failed to develop the record in state court to show whether any juror had read the allegedly prejudicial material in the diary and that the Missouri Supreme Court had found that there was no indication in the record of any improper communication with the jury.  The district court concluded that Hornbuckle had failed to show cause and prejudice for his failure to develop the record in state court and that he was not entitled to a federal evidentiary hearing.  On appeal, Hornbuckle has not alleged any grounds serving as cause for his failure to further develop the record in state court, nor does he argue that a fundamental miscarriage of justice will result from the district court's failure to hold an evidentiary hearing.  Thus, the district court did not err in ruling that Hornbuckle was not entitled to an evidentiary hearing.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 11-12 (1992).

Hornbuckle does not raise the merits of his claim on appeal, but intertwines the merits with the evidentiary hearing issue by arguing that Remmer v. United States, 347 U.S. 227, 229-30 (1954), required the district court to hold a hearing.  We disagree.

---

[5]Furthermore, these claims were not raised before the district court, so Hornbuckle's presentation of these claims to us constitutes an attempt to file a second, and abusive, petition; these claims are also subject to our general rule against considering claims not raised below.  See Whitmill v. Armontrout, 42 F.3d 1154, 1156 & n.1 (8th Cir. 1994).  Hornbuckle's motion to supplement the record with material relevant to these claims is denied.

Remmer, the cases Hornbuckle cites in his brief, and almost all of our cases applying Remmer, deal with alleged jury tampering, juror misconduct, or private, extrajudicial communication with jurors. Only one of our cases applying Remmer involved an exhibit sent to the jury during its deliberations, but the problem in that case was that the exhibit contained material that had not been admitted into evidence. See United States v. Johnson, 647 F.2d 815, 817 (8th Cir. 1981). In contrast, the Missouri Supreme Court found that the diary was properly admitted into evidence without objection or limitation and was sent to the jury in violation of only an agreement between the parties. See Hornbuckle, 769 S.W.2d at 98-99. Thus, Remmer is not applicable to Hornbuckle's situation.

**IV.**

Robert Sudhoff admittedly never saw his attacker, who was positioned behind him and holding a gun to his neck, but only heard the attacker's voice. Sudhoff later read newspaper accounts of a similar robbery which named Hornbuckle as a suspect. Sudhoff testified that he picked Hornbuckle out of a photo array based on his wife's description of the attacker. The photo was a mug shot that had Hornbuckle's name on it. Sudhoff later identified Hornbuckle at a live line-up after hearing his voice. He testified regarding both of his out-of-court identifications of Hornbuckle, but did not make an in-court identification because Hornbuckle had voluntarily absented himself from his trial. Hornbuckle, 769 S.W.2d at 91-92, 94.

Hornbuckle argues that Robert Sudhoff's identification testimony violated his right to due process. The State argues that we are procedurally barred from reviewing this claim because the Missouri Supreme Court conducted only a plain error review. As we recently noted in Mack v. Caspari, 92 F.3d 637 (8th Cir. 1996), "[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a

-6-

procedural default by a habeas petitioner, allowing collateral review by this court." Id. at 641 n.6. The State relies on Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996), as authority for the proposition that "a properly limited plain error review by a state court does not cure a procedural default." Another line of cases, including Mack and the cases cited therein, see 92 F.3d at 641 & n.6, holds that when a state court reviews for plain error, we may also review for plain error. Although we cannot resolve this divergence in our holdings, we may choose which line of cases to follow, see id. at 641 n.6. We choose to follow Mack, and thus we will review for plain error resulting in manifest injustice. See id. at 641.

The Missouri Supreme Court concluded that the photo array was not impermissibly suggestive and that any problems with the photographic identification went to the weight of the Sudhoffs' testimony. Although Robert Sudhoff's testimony arguably should not have been admitted, the court concluded there was no plain error because the problems with Sudhoff's identification--his acknowledgments that he had not seen the attacker's face and that he had selected Hornbuckle from the photo array based on his wife's description, a police officer's testimony that Sudhoff had not been able to identify anyone, and the lack of Sudhoff's signature on Hornbuckle's photo confirming that he had selected that one--had been put before the jury. See Hornbuckle, 769 S.W.2d at 92-95.

Although we agree with the Missouri Supreme Court that Robert Sudhoff's testimony about his photographic identification of Hornbuckle should not have been allowed, we find no plain error resulting in manifest injustice. The jury was made aware of Sudhoff's lack of opportunity to see Hornbuckle. Cf. Dodd v. Nix, 48 F.3d 1071, 1075 (8th Cir. 1995) ("Any remaining concerns about . . . the reliability of the out-of-court identification were for the jury to resolve."); Mack, 92 F.3d at 643 (citing Dodd).

With respect to the live line-up, the Missouri Supreme Court concluded that Sudhoff's identification testimony was admissible because his identification was based on his recognition of Hornbuckle's voice.  <u>See</u> <u>Hornbuckle</u>, 769 S.W.2d at 95.  We agree that there is no plain error regarding Sudhoff's testimony about the live line-up.

The judgment is affirmed.[6]

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[6]The State argues that portions of Hornbuckle's appeal are governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1218-21 (April 24, 1996), amending 28 U.S.C. §§ 2244(b) & 2254(d).  Given our disposition of Hornbuckle's claims, we need not decide whether these amendments apply to Hornbuckle's appeal.  <u>See</u> <u>Preston v. Delo</u>, 100 F.3d 596, 599 n.4 (8th Cir. 1996).  We note that the Supreme Court has granted certiorari to consider the retroactive application of the Act.  <u>See</u> <u>Lindh v. Murphy</u>, 96 F.3d 856 (7th Cir. 1996), <u>cert. granted</u>, 117 S. Ct. 726 (1997).