# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3775EM

_____

| | |
|---|---|
| Mose Young, | * |
| | * |
| Appellant, | * |
| | * |
| | * On Appeal from the United |
| v. | * States District Court |
| | * for the Eastern District |
| | * of Missouri. |
| Michael Bowersox, Superintendent, | * |
| Potosi Correctional Center, | * |
| | * |
| Appellee. | * |

_____

Submitted: September 21, 1998

Filed: December 4, 1998

_____

Before RICHARD S. ARNOLD, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Mose Young was convicted and sentenced to death for the murder of three men in a St. Louis pawn shop. After unsuccessful state appeals, he petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that numerous aspects of his trial

violated his constitutional rights. The District Court[1] denied the application, and Young now appeals on three grounds. First, he argues that he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's use of peremptory challenges to exclude black people from the jury. See Batson v. Kentucky, 476 U.S. 79 (1986). Second, he argues the trial judge should have granted a mistrial because of an unanswered question by the prosecutor directed to the defendant on cross-examination, which, Young argues, improperly implied that he had committed prior violent acts. And third, he claims he was denied due process by several allegedly improper remarks made by the prosecutor during closing arguments in the penalty phase of the trial. We find no merit to Young's arguments and affirm.

The facts concerning the crime itself are not relevant to the issues on appeal, except to point out that Young, who is black, was charged with shooting and killing three men on February 8, 1983.

## I.

Young's first argument relates to the failure of his trial attorney to object to what he contends was the prosecutor's racially discriminatory use of peremptory challenges. Counsel's trial notes indicate the prosecutor used all nine of his peremptory strikes against black veniremen.[2] Counsel did not object to this tactic, although he claimed he was well aware of the state prosecutor's practice of excluding black people from juries, had objected to this practice in the past, and had intended to do so in this case. Young claims that this oversight deprived him of the effective assistance of counsel and resulted in a structural defect that tainted the entire trial.

---

[1]The Hon. George F. Gunn, Jr., late a United States District Judge for the Eastern District of Missouri.

[2]The notes also indicate that there were seven white jurors and five black jurors.

In order to prevail on a claim of ineffective assistance of counsel, Young must show that his attorney's assistance "fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). We find it unnecessary to discuss the reasonableness of counsel's conduct because, in any event, Young cannot show he was prejudiced by this oversight. As Strickland makes clear, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697. Young cannot satisfy the prejudice requirement and has not attempted to do so. Instead, he urges this Court to view his counsel's failure to lodge the Batson objection as a "structural defect" which is presumptively prejudicial. According to Young, a Batson error is a structural defect which renders the entire trial unreliable, and it necessarily follows that prejudice should be presumed. Otherwise, Young argues, he is forced into the impossible position of showing how the outcome of the trial would have been different in the absence of a structural defect.

We cannot accept this position. This case is controlled by Wright v. Nix, 928 F.2d 270 (8th Cir. 1991). In Wright, we were also confronted with a defendant whose attorney had failed to object to the prosecutor's use of peremptory challenges to exclude non-whites from the jury.[3] Because the defendant Wright had failed to raise this issue properly, he was required to show both cause and prejudice for his omission in order to attack his state conviction in a federal court. Wright argued that the ineffective assistance of his trial counsel was the cause of the omission, and thus he had to satisfy the two-part Strickland test. Like Young, Wright argued that requiring him to show prejudice in the sense of a reasonable probability of a different outcome asked

---

[3]The claim Wright's attorney failed to preserve relied on Swain v. Alabama, 380 U.S. 202 (1965). The reasoning of our Wright opinion would apply with at least equal force to a Batson claim.

the impossible. We rejected Wright's attempt to avoid the prejudice requirement of Strickland. We explained that an error by counsel does not warrant setting aside the judgment of a criminal proceeding on collateral attack if the error had no effect on the judgment. Wright, 928 F.2d at 273 (citing Strickland, 466 U.S. at 691).

A passage from the concurring opinion in Wright is relevant here:

> [Wright] has not shown that the individual jurors who tried him were not impartial, and, as already noted, he has not even begun to show that the presence of the black juror[s] in question on the jury that tried him would have affected the outcome at all. It is in the sense of outcome, I submit, that the Strickland Court used the term "prejudice." The focus is on the outcome of the individual trial. Is there a reasonable likelihood that it would have been different? Here, I am persuaded that there is no such likelihood, and I therefore agree that this judgment should be affirmed.

928 F.2d at 274. Young has not shown a reasonable probability that the results of the proceeding would have been different, and his ineffective-assistance-of-counsel claim must fail.

II.

Young's next argument relates to the prosecutor's conduct during cross-examination. The prosecutor began questioning Young regarding the origin of an alleged disability which defense counsel mentioned in opening arguments. Defense counsel had referred to the fact that Young had a slight limp while explaining Young's version of his hasty retreat from the crime scene. In response to the question about the disability, Young volunteered that he had also been shot in the back, and then explained that his limp was the result of an old football injury. The prosecutor followed up with a question about the gunshot wound, and defense counsel objected. A sidebar

followed, and the trial judge sustained the objection. The prosecutor then returned to cross-examination, and the following exchange ensued:

> Q: "Mr. Young, how many people have you shot?"
> A: "Have I shot?"
> Q: "Yeah, how many."

Defense counsel quickly objected and requested a mistrial, arguing that the prosecutor was attempting to introduce evidence of other crimes. The judge sustained the objection, denied the request for a mistrial, and Young never answered the question.

Although the prosecutor admitted during sidebar that he was referring to "specific prior bad acts," the State now suggests that the jury most probably interpreted the question to refer to how many people Young shot in this case. We will assume the jury's interpretation of the question was consistent with the prosecutor's purpose. Even so, the unanswered question is not "so egregious that [it] fatally infected the proceedings and rendered [the] entire trial fundamentally unfair." Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). The question did not refer to any specific past acts or indicate what the circumstances surrounding those acts might be. Moreover, the evidence of Young's guilt was overwhelming, and the jury relied on multiple aggravating circumstances when setting the penalty.

## III.

Young's final argument concerns several statements the prosecutor made during closing arguments at the penalty phase of the trial. In arguing that the evidence supported finding the crime was committed with "depravity of mind," an aggravating circumstance, the prosecutor stated, "it's disgusting and it's as cold as anything I've ever seen." The prosecutor also stated, "if the death penalty is an appropriate punishment, you tell me a situation where it's more appropriate than here." The

defense did not object to either of these statements.  The third allegedly improper remark relates to the prosecutor's attempt to imply that if Young did not receive the death penalty, he might take the life of a fellow inmate.  The prosecutor suggested, "why should he hesitate to take a life of somebody he doesn't like in the penitentiary . . . [w]hat would it be for then, folks, a pack of cigarettes, a stick of gum, a[n] extra fifty cents."  Counsel objected to this line of argument and again moved for a mistrial, the objection was overruled, and the motion was denied.  Young failed to raise any of these issues in his motion for a new trial.  The Missouri Supreme Court, therefore,  reviewed the allegedly improper comments for plain error, State v. Young, 701 S.W.2d 429, 435 (Mo. 1985) (en banc), and we will do the same.  Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997).

The test for prosecutorial misconduct has two parts.  First, the remarks must have been improper, and second, the remarks must have been so prejudicial as to deprive the defendant of a fair trial.  United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985).  The first remark was clearly improper.  It invited the jury to rely on the prosecutor's personal opinion about the relative coldness of this crime and compared the circumstances of this crime to other crimes that were not in the record.  Analyzing the prejudicial effect of these remarks requires us to consider a number of factors:  (1) the type of prejudice that arose from the remark; (2) whether defense counsel did anything in his argument to minimize the prejudice; (3) whether the jury was properly instructed; and (4) whether there is a reasonable probability that the outcome of the sentencing phase would have been different, taking into account all of the aggravating and mitigating circumstances.  Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995).  As noted above, the prosecutor made this statement as part of his argument that the crime involved depravity of mind and was outrageously or wantonly vile, horrible, or inhuman.  There was overwhelming evidence from which the jury could have found the presence of this aggravating circumstance aside from the prosecutor's personal opinion that it was as cold as anything he had ever seen.  In addition to finding depravity of mind, the jury designated four other aggravating

-6-

circumstances for two of the murders and five others for the third. After taking all of the aggravating and mitigating circumstances into account, we see no probability that the sentence would have been any different. The error was harmless beyond a reasonable doubt.

The second remark was the prosecutor's statement that "if the death penalty is an appropriate punishment, you tell me a situation where it's more appropriate than here." We do not find this type of rhetorical statement improper. Even if it were, it would certainly not rise to the level of a constitutional violation.

Finally, Young argues that it was improper for the prosecutor to comment on his future dangerousness during the sentencing phase of trial. In support of this position, Young cites to a case from the Seventh Circuit which held that the "government may not attempt to obtain a <u>conviction</u> by appealing to jurors to prevent future crimes by finding present guilt." United States v. Cunningham, 54 F.3d 295, 300 (7th Cir. 1995) (emphasis supplied). This is not the case here. The prosecutor's comments were made during the sentencing phase, and the Supreme Court has specifically approved capital-sentencing procedures that allow the jury to consider the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Jurek v. Texas, 428 U.S. 262, 274-76 (1976). Because we do not find this comment improper, it is unnecessary to determine whether any prejudice resulted. The argument did no more than invite the jury to consider that a life sentence might not be sufficient to deter this defendant, who had killed three people, from committing murders in the future. Juries are fully capable of properly weighing this kind of rhetoric.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.